UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HARTFORD CASUALTY INSURANCE
COMPANY, *a/s/o Age Manufacturers*,

          Plaintiff,

- against-

RIBELLINO FAMILY LIMITED
PARTNERSHIP, 8112-8124 18TH AVE.
REALTY CORPORATION,
          Defendants.
-----------------------------------------------------------X
RIBELLINO FAMILY LIMITED
PARTNERSHIP,

          Cross-Claimant,

- against-

8112-8124 18TH AVE. REALTY
CORPORATION,
          Cross-Defendant.
-----------------------------------------------------------X

04 CV 1594 (SJ)

MEMORANDUM
AND ORDER

A P P E A R A N C E S:

ROBINSON & COLE LLP
885 Third Avenue, 28th Floor
New York, NY 10022
By:    Michael B. Golden, Ross Stuart Katz
Attorneys for Plaintiff

QUIRK & BAKALOR PC
845 Third Avenue, 15th floor
New York, NY 10022
By:    Tamika Nicole Sanders
Attorney for Defendants

1

JOHNSON, Senior District Judge:

Plaintiff Hartford Casualty Insurance Company ("Plaintiff"), as subrogee of AGE Manufacturers, Inc. ("AGE"), brings this subrogation action against Defendants Ribellino Family Limited Partnership and 8112-8124 18th Ave. Realty Corporation ("Defendants") to recover $166,237 paid as compensation to AGE after AGE suffered property damage that Plaintiff contends was a consequence of Defendants' negligence. Presently before this Court is Defendants' Motion for Summary Judgment,[1] which asserts that Plaintiff's Complaint is barred by New York's antisubrogation rule.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact, and the district court's task is limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). In deciding such a motion, this Court "must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable

---

[1] Defendants' papers at some points refer to the motion as a motion to dismiss (e.g. Defs.' Reply Aff. ¶ 3). However, it is more appropriately considered a motion for summary judgment, in that Defendants wish the Court to consider exhibits and other materials beyond the Complaint and its incorporated documents, which cannot be considered in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996).

2

inferences in its favor." Id.

# FACTUAL BACKGROUND

On or about June 20, 1996, Defendants purchased property that included the building located at 94 9th Street, in Brooklyn, New York ("the building"). (Defs.' R. 56.1 Stmt. ¶ 1.) AGE was a tenant of the building at this time. (Id. ¶ 2.) In or about April 2003, AGE and Defendants entered a lease agreement providing that AGE would rent the top floor of the building and a portion of the third floor, beginning on June 1, 2003 and ending on May 31, 2005. (Id. ¶ 3.) With respect to insurance coverage, the lease provided that:

> Lessee, at all times during the Lease Term and at Lessee's expense, shall provide and maintain in full force and effect with insurers approved by Lessor:
> (a) public liability and property damage insurance protecting Lessor against any and all liability occasioned by negligence, occurrence, accident or disaster in or about the Demised Premises or any part thereof, or the Improvements now or hereafter erected thereon . . . .

(Defs.' Ex. E, Art. 13) and further, that:

> All insurance maintained by Lessee pursuant to this Article 13:
> (a) shall, except for workers' compensation insurance, name Lessor and Lessee as insured, as their respective interests may appear, and shall include an effective waiver by the issuer of all rights of subrogation against any named insured or such insured's interest in the Demised Premises or any income derived therefrom. . . .

(Id.) With respect to indemnification, the lease provided that:

> Lessee shall indemnify and hold Lessor harmless from and against all liabilities, obligations, claims, damages, fines, penalties, interest, causes of action, costs and expenses, including attorneys' fees . . . imposed upon or incurred by or asserted against Lessor or the Demised Premises by

3

P-049

reason of the occurrence or existence of any of the following:
a) . . . loss of or damage to property occurring . . . on or about the Demised Premises or any part thereof, or any Improvements now or hereafter erected thereon . . .

(Id., Art. 14.) The lease does not make any specific references to the roof. (See Defs.' Ex. E.)

From the period of March 17, 2003 until March 17, 2004, AGE was covered by an insurance policy issued by Plaintiff under the policy number # 01 UUN GA6217. (Defs.' Ex. F.) In its listing of "who is an insured," the policy included:

Any person or organization from whom you lease land or premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land or premises leased to you.

(Defs.' Ex. F, § 6(c), Bates stamped page HART000372.) The policy contained the following exclusion:

This insurance does not apply to:
. . . 2. Structural alterations, new construction or demolition operations performed by or on behalf of [any person or organization from whom you lease land or premises].

(Id.)

While the lease and insurance policy were in effect, on or about September 1, 2003, AGE sustained property damages when water leaked into the building during a rain storm. (Compl. ¶¶ 2–3.) Plaintiff paid AGE $166,237 in connection with this damage. (Id. ¶ 2.) Plaintiff alleges that the reason that the leak occurred was that Defendants were installing a new roof on the building at the time of the storm and that the roof had not been properly sealed and waterproofed. (Id. ¶ 3.) Plaintiff contends that

P-049

the damages were a result of Defendants' negligence and/or gross negligence in hiring, retaining, and supervising the roofer who was working on the building. (Id. ¶¶ 18–31.) Defendants deny these allegations (Ans. at 2), but at this stage, as Plaintiff is the nonmoving party, the Court must construe all evidence in Plaintiff's favor. See Kerzer, 156 F.3d at 400. Additionally, the Court notes that Defendants have not offered any evidence that the damage did not occur or that it was not caused by errors committed during the roofing process. Rather, Defendants' arguments in their Motion are premised entirely on the antisubrogation rule. The Court will therefore assume, for the purposes of deciding this Motion, that the damage did occur, that it occurred due to a leak from the roof, and that the leak was due to Defendants' negligence.

## DISCUSSION

I.  *Jurisdiction and Applicable Law*

The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy is greater than $75,000.[2] In a diversity action, a federal court must apply state substantive law — in this instance, the law of subrogation — in accordance with the choice of law provisions of the forum state. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Ocean Ships, Inc. v. Stiles, 315 F.3d 111, 116 n.4 (2d Cir. 2002); American Hardware Mut. Ins. Co. v. Fire Equipment Sales & Service, Inc., 2004 WL 1563087, *3 (W.D.N.Y. June 9, 2004).

---

[2.] Plaintiff is a citizen of Connecticut and Defendants are citizens of New York. (Compl. ¶¶ 6–8.)

5

P-049

Since the site of the incident is in New York and the Defendants are located in New York, and since neither party has raised any choice of law issue, the Court finds that New York law, including the antisubrogation rule, governs. See American Hardware Mut. Ins. Co. v. Fire Equipment Sales & Service, Inc., 2004 WL 1563087, *3 (W.D.N.Y. June 9, 2004).

## II. *New York's Antisubrogation Rule*

Under New York law, an insurer that has paid on its insured's claim has the common law right to subrogation against the person who is responsible for the events underlying the claim. See, e.g., North Star Reinsurance Corp. v. Continental Ins. Co., 82 N.Y.2d 281, 294 (N.Y. 1993). However, under the antisubrogation rule, "an insurance company cannot recover from its own insured for the very risk for which the insured was covered." Dillion v. Parade Mgmt. Corp., 268 A.D.2d 554, 556 (N.Y.A.D. 2000). This exception is based on the public policy goals of preventing an insurer from passing a loss to its own insured, and guarding against the potential for conflict of interest that may affect an insurer's incentive to provide a vigorous defense for its insured. Id. This antisubrogation principle bars claims not only against the individual or entity who is directly insured, but also to "additional insureds" when there is an express indemnity agreement. Allianz Ins. Co. v. Otero, 353 F.Supp.2d 415, 426–427 (S.D.N.Y. 2004).

Plaintiff contends that the antisubrogation rule is inapplicable here for two reasons: 1) the lease only required AGE to obtain insurance protecting Defendants, as lessors, against liability occasioned by actions *in or about the demised premises*, and

6

P-049

Plaintiff submits that the demised premises do not include the roof, such that Defendants were not additional insureds when working on the roof rather than within the premises; and 2) even if Defendants were additional insureds under the policy, they are not additional insureds with respect to this particular loss because of the exclusion in the insurance policy stating that the insurance does not apply to "structural alterations, new construction or demolition operations[.]" (See Pl.'s Aff. Opp'n Mot. Summ. J. ¶¶ 7–11.) Plaintiff argues that under either of these scenarios, Defendants cannot be considered "additional insureds" and therefore are not protected by the antisubrogation rule.

III.    *Whether the Damage Was Caused By Actions in or About the Demised Premises*

Article 13 of the lease states that AGE would maintain property damage insurance covering Defendants with respect to "against any and all liability occasioned by negligence, occurrence, accident or disaster in or about the Demised Premises or any part thereof, or the Improvements now or hereafter erected thereon[.]" (Defs.' Ex. E, Art. 13.) Plaintiff contends that the demised premises does not include the roof. Defendants argue that this provision was triggered either because the roof is simply part of the demised premises, or because the damage itself occurred within the portion of the property that is indisputably within the demised premises. (Defs.' Repl. Aff. ¶¶ 6–12.)

The Court finds that the roof is "in or about" the demised premises, given that AGE rented the top floor of the building and there was no carve-out provision in the lease stating that the roof would not be treated as part of the premises. Moreover, the Court finds that even if the roof were not part of the demised premises, the "occurrence"

7

for which AGE was compensated, i.e. the water damage to AGE's property, clearly occurred within the space that AGE was renting. The Court finds that it would be illogical and would undermine the public policy goal of providing some measure of predictability in contractual arrangements if the applicability of the provision were to turn on the contingency of where, precisely, the ultimate source of the error lay. For example, under Plaintiff's reasoning, if Defendants had caused a water pipe to burst within AGE's walls by negligently installing a defective piece of piping, the lease provision would be triggered if the defective piece lay within the walls surrounding the rented space, but not if it lay somewhere else within the building but caused a buildup and explosion within the rented space. Such a result would be illogical, and the language of the contract does not indicate that it was what the parties intended.

IV.   *Whether the Exclusion in the Insurance Policy Applies*

Under the insurance policy, people or organizations from whom AGE was renting property are covered as additional insureds "with respect to liability arising out of . . . maintenance . . . of that part of the land or premises leased to [AGE]" but not with respect to "[s]tructural alterations, new construction or demolition operations[.]" (Defs.' Ex. F, § 6(c), Bates stamped page HART000372.) It appears, therefore, that the applicability of the policy depends on whether the work on the roof is most appropriately categorized as "maintenance" (in which case it would be covered) or "structural alterations, new construction or demolition operations" (in which case it would not be covered).

8

Plaintiff contends that the work being done on the roof was a structural repair or alteration and that the insurance therefore did not cover this activity. (Pl.'s Aff. Opp'n Mot. Summ. J. ¶¶ 10–11.) Defendants argue that Plaintiff has offered no evidence in support of the claim that the work rises to the level of a structural alteration, and that if the work were a structural alteration, AGE would not have been able to keep its equipment in the building. (Defs.' Repl. Aff. ¶¶ 15–18.) Richard Ribellino has submitted an affidavit stating that the work on the roof consisted of repairs on approximately 11,000 square feet of the 22,000 square foot roof. (Defs.' Repl. Aff. Ex. A ¶ 5.)

In considering the question of whether work done on a building should be considered a "structural alteration" or merely repair or maintenance, New York state courts have held that "[a] structural change or alteration is such a change as affects a vital and substantial portion of the premises, as changes its characteristic appearance, the fundamental purpose of its erection, or the uses contemplated, or, a change of such a nature as affects the very realty itself — extraordinary in scope and effect, or unusual in expenditure." Garrow v. Smith, 198 A.D.2d 622, 623 (N.Y.A.D. 1993) (citing 74 NY Jur. 2d, Landlord and Tenant, § 203, at 246). Therefore, "what will constitute a structural alteration necessarily depends upon the facts of each case and requires that the nature and extent of the proposed repair or alteration be examined in the context of and in relationship to the structure itself." Id. at 624.

Because the determination of whether an action was a structural alteration or a

9

repair requires a factual inquiry, summary judgment is inappropriate where this question has arisen. Id. The Court finds that it cannot rely on the presumption that if the work were a structural alteration, AGE would not have been able to keep its equipment in the building, nor can it rely solely on Defendants' affidavit in order to conclude that the work was maintenance rather than structural alteration. Rather, the appropriate course of action is to deny summary judgment and permit the parties to proceed to discovery in order to determine whether the work was a structural alteration, given that this is a genuine issue of material fact. See Fed. R. Civ. P. 56(c).

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is DENIED.

SO ORDERED.

Dated: April 16, 2005
Brooklyn, New York

_____
Senior U.S.D.J.